**Heather LUTHY, Plaintiff,**

v.

**David PROULX and, City of Attleboro, Defendants.**

**Civil Action No. 06–11089–JLT.**

United States District Court,
D. Massachusetts.

Dec. 14, 2006.

Christopher J. Trombetta, Law Office of Christopher J. Trombetta, Mansfield, MA, for Plaintiff.

Gregg J. Corbo, Joseph L. Tehan, Jr., Kopelman & Paige, PC, Boston, MA, for Defendants.

## *MEMORANDUM*

TAURO, District Judge.

### Background

This is a civil action arising out of Plaintiff Heather Luthy's ("Luthy") dismissal from the City of Attleboro's Tax Collec-

tor's Department (the "Department"), and subsequent arrest and prosecution, for alleged theft from the the the Department. Defendants are David Proulx ("Proulx"), the Tax Collector for the City of Attleboro and Luthy's former supervisor, and the City of Attleboro (the "City"). Pending before the court is the City's Motion to Dismiss all counts against the City pursuant to Fed R. Civ. P. 12(b)(6).

The following are the facts as presented in the complaint. Luthy was one of several clerks at the Department charged with receiving cash payments from customers at the Department's front office. Upon receiving a payment, the clerks provide a receipt, deposit the cash in a drawer, and later record the payment on a computer. Beginning in early August 2003, several Attleboro residents complained to the Department that they received bills from the Tax Collector for amounts already paid. In response to these claims, Proulx announced that a total of $11,810 had gone missing from the Tax Department over a period of six months. Suspicion focused on the Department's clerks after Proulx identified eleven occasions over that six month period where specific amounts of money corresponding to customer receipts were not deposited in the cash drawer, nor recorded in the Department's computer. Luthy was the clerk working on at least one of these occasions, and Proulx accused her of stealing at least some of the money. Luthy denies any involvement, and claims Proulx took no action against other clerks who were also working on one of the eleven days when money allegedly went missing.

As a result of Proulx's accusations, Luthy was fired from the Tax Collector's Department. Luthy was also arrested and charged with theft of funds from the Department. She was ultimately acquitted of the charges at trial.

The alleged theft garnered some attention in the local news media, and Proulx was quoted in several local newspaper articles discussing the case against Luthy both during her trial, and after her acquittal.[1]

Luthy filed her complaint in this court on June 26, 2006. In Count I, Luthy seeks to recover against Proulx and the City under 42 U.S.C. § 1983 for depriving her of her constitutionally guaranteed rights by leveling baseless accusations against her.[2] Luthy also brings pendant state tort claims, including Count II) false arrest and false imprisonment, Count III) defamation, Count IV) intentional infliction of emotional distress, Count V) negligent infliction of emotional distress, Count VI) malicious prosecution, Count VII) abuse of process, Count VIII) wrongful discharge, and Count IX) unfair and deceptive acts in violation of Mass. Gen. Laws ch. 93A.[3]

## Discussion

### I. Standard of Review

A valid claim under Fed.R.Civ.P. 8(b)(2) "requires only 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[4] In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), all well-pleaded facts stated in the complaint should be taken as true, and all reasonable inferences drawn in favor of the plaintiff.[5] Courts may dismiss a com-

1. *Compl.*, paper # 1, Ex. B, C, and D.

2. *Id.* ¶¶ 47–50.

3. *Id.* ¶¶ 51–81.

4. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

5. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir.2000).

plaint under Fed.R.Civ.P. 12(b)(6) only when "it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." [6]

Rule 12(b)(6) is not, however, a "toothless tiger." [7] In considering a motion to dismiss, "courts should ... eschew any reliance on 'bald assertions, unsupportable conclusions, and opprobrious epithets.'" [8] While the complaint need only set forth "a generalized statement of facts" to avoid dismissal, the plaintiff must provide enough information "to outline the elements of [the] claim." [9]

## II. 42 U.S.C. § 1983

### A. *Constitutional Basis for Luthy's Section 1983 Claim*

██ 42 U.S.C. § 1983 "creates 'a species of tort liability' for redressing deprivations of federal constitutional rights." [10] As such, section 1983 permits the "vindicat[ion][of] federal rights, but is not a source of substantive rights in itself." [11] Accordingly, the plaintiff must identify the deprivation of a specific constitutional right as a threshold to a 42 U.S.C. § 1983 claim. [12]

██ A malicious prosecution may be actionable under section 1983 if it results in the deprivation of the constitutional right against unreasonable seizure. [13] Luthy's complaint does state facts that, if true, would sustain her malicious prosecution claim against Proulx. [14] Luthy alleges that Proulx maliciously brought baseless accusations against her to the police, and that she was acquitted of the charges at trial. Assuming that a magistrate issued a warrant for Luthy's arrest, and the warrant was based on false information provided by Proulx, then the warrant constituted the commencement of legal process against Luthy. [15] Her arrest—a seizure under the Fourth Amendment—is the constitutional deprivation pursuant to a legal process that grounds Luthy's section 1983 malicious prosecution claim. [16] Luthy has alleged a constitutional violation that could support a § 1983 claim.

### B. *Municipal Liability*

██ Although the Fourth Amendment may provide the basis for her federal

---

**6.** *Judge v. City of Lowell,* 160 F.3d 67, 72 (1st Cir.1998) (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99).

**7.** *Educadores Puertorriquenos en Accion v. Hernandez,* 367 F.3d 61, 67 (1st Cir.2004) (citation omitted) (adopting a notice pleading standard in civil rights cases, but reasserting that courts should not rely on bald assertions).

**8.** *Id.*

**9.** *Kadar Corp. v. Milbury,* 549 F.2d 230, 233 (1st Cir.1977).

**10.** *Calero–Colon v. Betancourt–Lebron,* 68 F.3d 1, 2 (1st Cir.1995).

**11.** *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

**12.** *Nieves v. McSweeney,* 241 F.3d 46, 53 (1st Cir.2001); *see Albright,* 510 U.S. at 271, 114 S.Ct. 807.

**13.** *See Albright,* 510 U.S. at 271–75, 114 S.Ct. 807 (finding Fourth Amendment infringements may be the basis of a federal malicious prosecution claim); *Nieves,* 241 F.3d at 54 ("it is an open question whether the Constitution permits the assertion of a section 1983 claim for malicious prosecution on the basis of an alleged Fourth Amendment violation").

**14.** *See Landrigan v. Warwick,* 628 F.2d 736, 745 n. 6 (1st Cir.1980) (laying out the elements of a malicious prosecution claim).

**15.** *Calero–Colon,* 68 F.3d at 3; *Singer v. Fulton County Sheriff,* 63 F.3d 110, 117 (2d Cir. 1995).

**16.** *See Albright,* 510 U.S. at 271–75, 114 S.Ct. 807; *Calero–Colon* 68 F.3d at 3–4.

malicious prosecution claim, Luthy's complaint itself fails to properly plead facts that would make the City liable for a deprivation of Luthy's rights. A municipality cannot be liable for the isolated actions of a single employee.[17] Instead, section 1983 liability must be grounded in the execution of a government policy or custom to implicate a municipality in the deprivation of a person's constitutionally protected rights.[18] Specifically, to establish municipal liability under section 1983, a plaintiff must show "1) there existed a municipal custom or policy of deliberate indifference to the commission of constitutional violations . . .; and 2) this custom or policy was the cause of and moving force behind, the particular constitutional deprivation of which [plaintiff] is complaining."[19] To survive the City's motion to dismiss, Luthy's complaint must include at least minimal allegations that outline such a municipal custom or policy.

### 1. The Complaint

■ Luthy does not specifically allege the existence of a custom or policy causing constitutional violations in her Complaint. Further, none of the facts outlined in the complaint support the inference of a City

policy or custom of deliberate indifference to deprivations of the rights of its employees. In stating her case against the City, Luthy claims that "Proulx and the City of Attleboro . . . caused criminal charges to be lodged against [her]," and that "the City of Attleboro arrested [her]."[20] The city cannot be liable on a theory of respondeat superior.[21] The Complaint must allege a custom or policy. It does not. Count One is DISMISSED WITHOUT PREJUDICE.

### 2. Customs or policies identified in the Memorandum in Opposition

■ Luthy identifies three specific municipal customs or policies in her Opposition to the City's Motion to Dismiss: 1) lack of investigation as to claims relevant to city employees;[22] 2) "serial misconduct" directed against her;[23] and 3) "placing political issues ahead of legitimate issues related to of [sic] City employees."[24] For the purposes of the Motion to Dismiss, this court need only consider the facts and allegations made in the complaint.[25] Yet, because the court would grant Luthy leave to amend, the court will consider her theories.

---

17. *City of Canton v. Harris*, 489 U.S. 378, 385–87, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (discussing and identifying the kinds of policies that can qualify a city or town for municipal liability).

18. *Id.*

19. *Foley v. City of Lowell*, 948 F.2d 10, 14 (1st Cir.1991) (quoting *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir.1989)).

20. *Complaint*, paper # 1, ¶¶ 29–30. Luthy's vague statement that the City "arrested her" seems to implicate the City for its policymaking or supervisory role over the police department. If the police believed Proulx's allegations were baseless, but applied for a warrant and arrested Luthy on bad faith, then it was

the police, and not Proulx who brought about the illegal seizure. Luthy does not suggest, nor should the court infer, that any police impropriety exists in this case.

21. *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

22. *Pl.'s Opp'n*, paper # 7, 9.

23. *Id.*

24. *Id.* at 10.

25. *See Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984) ("it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss").

■ The exact requirements for pleading in a civil rights case are not well defined. In *Leatherman*, the Supreme Court unanimously rejected a heightened pleading standard for civil rights cases.[26] Plaintiff thus need not plead specific facts to support her allegation of a custom or policy. At the same time, precedent is quite clear that bald allegations do not meet even the forgiving notice pleading standard.[27] But, the First Circuit is clear that in civil rights cases, "a court confronted with a Rule 12(b)(6) motion 'may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"[28] These standards are somewhat at odds.[29] Ms. Luthy's assertions regarding a custom or policy are supported only by her allegation of one constitutional violation, her arrest. The allegations of a custom of policy are thus somewhat naked. Nonetheless, it is conceivable that discovery could reveal multiple similar incidents in the last two years—strong evidence of a custom of policy of failure to investigate. Supreme Court precedent indicates that Luthy's simple allegations entitle her to use to use the powerful tools of discovery to try to reveal evidence of the asserted custom or policy that caused her allegedly unconstitutional arrest.[30] Luthy's theories regard-

---

**26.** *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 169, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

**27.** *Educadores Puertorriquenos en Accion*, 367 F.3d at 68.

**28.** *Id.* at 66.

**29.** It can be difficult to discern a bald assertion from proper notice pleading. Some precedent indicates that simple notice of a custom or policy is not enough:

In light of these principles, it is clear that the district court properly dismissed Oparaji's § 1983 claims. Oparaji does not provide any facts in support of his conclusory allegation of the City's failure to properly train and supervise police officers amounts to a custom or policy, or that this custom or policy caused Oparaji's injuries. *See Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993) (noting that "the mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference"). This conclusion is true even under the liberal notice pleading standard set forth in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Simply, "bald assertions and conclusions of law" do not prevent the dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6).

*Oparaji v. City of New York*, 152 F.3d 920, 1998 WL 432988 at *1–2 (2d Cir.1998). *See also Wayne v. City of San Antonio et al*, No. SA–06–CV–551–XR, 2006 WL 3487022, at *7, 2006 U.S. Dist. LEXIS 87061, at *22 (D.Tex. Nov. 30, 2006) ("Plaintiff should also supplement the factual predicate regarding his 'custom of using excessive force' claim. Naked, conclusory allegations that a municipal custom or policy exists, without more (i.e. a factual predicate), do not satisfy the notice pleading requirement of Rule 8 and are subject to dismissal.") *But see Lanigan v. Village of E. Hazel Crest*, 110 F.3d 467, 480 (7th Cir.1997) ("The allegations against the Village come close to the level of 'boilerplate vagueness.' *Sivard*, 17 F.3d at 188. However, we recognize that *Leatherman* does not require Lanigan to do more than he has done so far.") .

**30.** *See Leatherman*, 507 U.S. at 169, 113 S.Ct. 1160 ("Perhaps if Rules 8 and 9 were rewritten today, claims against municipalities under § 1983 might be subjected to the added specificity requirement of Rule 9(b). But that is a result which must be obtained by the process of amending the Federal Rules, and not by judicial interpretation. In the absence of such an amendment, federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.")

ing a municipal custom or policy could thus survive a motion to dismiss.

Though Luthy's complaint is insufficient, her Memorandum in Opposition to the Motion to Dismiss indicates that, given another chance, she could state a claim upon which relief could be granted. Leave to amend "shall be freely given when justice so requires."[31] Justice would not be served by barring Luthy's action for a technical pleading defect. Luthy may replead her Section 1983 complaint to properly include these allegations. If she seeks to maintain her Section 1983 claim against the city, she must file an amended complaint within 14 days.

### III. City Immunity under the Massachusetts Tort Claims Act

▆▆▆ The Massachusetts Tort Claims Act (MTCA)[32] creates "a cause of action against public employers for the negligent or wrongful acts or omissions of their employees acting within the scope of their employment."[33] Intentional torts are expressly exempted form the Massachusetts Tort Claims Act, so public employers are not liable for the intentional torts of their employees.[34] Counts II (false arrest and false imprisonment), III (defamation), IV (intentional infliction of emotional distress), VI (malicious prosecution), and VII (abuse of process) of Luthy's complaint against the City allege intentional torts committed by a City employee which are explicitly exempted from the scope of municipal liability under the MTCA.[35] Accordingly, Counts II, III, IV, VI and VII against the City are DISMISSED WITH PREJUDICE.

Again, in her Memorandum in Opposition, Ms. Luthy posits that she could bypass this problem by amending her complaint to instead name the mayor as a defendant. As stated above, the court has granted Ms. Luthy leave to amend her complaint with respect to the § 1983 claim. Should she consider including a count against the mayor, she should be advised that merely naming the mayor as a defendant in his official capacity, without making factual allegations about particular actions he took, will not circumvent immunity under the MTCA.

### IV. Negligent Infliction of Emotional Distress and the Workers Compensation Act

In Count V, Luthy alleges that the city "Engaged negligently as to acts which caused emotional and physical harm." The City moved to dismiss Count V of Luthy's complaint, arguing that her claims of negligent infliction of emotional distress are barred by the exclusivity provision of the Workers Compensation Act (the "WCA").

The WCA provides that an employee waives the right to recover for personal injuries against an employer at common law, if the WCA would otherwise provide compensation for the personal injury.[36] The WCA exclusivity provision stops a common law tort claim when 1) the plaintiff is an employee, 2) the plaintiff's condition is shown to be a "personal injury" within the meaning of the WCA, and 3) "the injury is shown to have arisen 'out of

---

31. Fed.R.Civ.P. 15(a).

32. Mass. Gen. Laws ch. 258, § 1–14 (2006).

33. *Nelson v. Salem State College*, 446 Mass. 525, 845 N.E.2d 338, 348 (2006).

34. Mass. Gen. Laws. ch. 258, § 10(c).

35. *Id.*

36. Mass. Gen. Laws. ch. 152, § 24.

and in the course of employment.' " [37]

■ As the first prong of the WCA exclusivity provision suggests, ordinarily the WCA cannot bar a common law claim against an employer if the plaintiff's injury was caused after the conclusion of the plaintiff's employment.[38] If, however, the injury is caused by "post-termination activity [that] is closely related to the employment, both in time and space," the WCA may still apply.[39]

■ Negligent infliction of emotional distress is a personal injury for WCA purposes,[40] so whether the WCA exclusivity provision bars Luthy's negligent infliction of emotional distress claim turns on whether Luthy was an employee at the time, and whether her injury "arose out of and in the course of her employment." Although Luthy complains that her injury was caused by Proulx's and the City's actions both during, and subsequent to her employment with the Department, the fact that Luthy continued to suffer an injury after her termination does not render the WCA inapplicable. The roots of Luthy's injury are the circumstances surrounding her termination, namely the City's alleged failure to conduct a proper investigation. The other actions complained of by Luthy are intentional torts, rather than claims of negligence. The only allegedly negligent action, the failure to investigate, occurred while she was a Department employee,

and "arose out of and in the course of her employment." To the extent that Luthy's injury occurred after her termination, that injury is sufficiently related to her employment "both in time and space," such that her claim is still barred by the WCA. Count V of Luthy's complaint against the City is therefore DISMISSED WITH PREJUDICE.

## V. Wrongful Discharge

Luthy also complains of wrongful discharge in Count VIII. In her complaint, Luthy asserts that "[t]he City of Attleboro provides that it may terminate employees only for cause." [41] The City agrees that under the terms of the Collective Bargaining Agreement between the City and the Attleboro Municipal Clerks' Association (the "CBA"), "[b]oth parties recognize that the Mayor and the Department Heads shall at all times retain the right ... to suspend, demote, discharge, or take other disciplinary action against employees for just cause, to relieve employees from duties for lack of work or for other legitimate reasons to maintain the efficiency of the operations entrusted to them...." [42] When an employee calls into doubt the City's finding of "just cause" to terminate employment, the CBA allows employees to appeal their termination through a grievance procedure.[43]

---

37. *Foley v. Polaroid Corp.,* 381 Mass. 545, 548–49, 413 N.E.2d 711 (1980) (quoting Mass.Gen. Laws. ch. 152, § 24).

38. *See Grant v. John Hancock Mut. Life Ins. Co.,* 183 F.Supp.2d 344, 367–368 (D.Mass. 2002) (finding most common law claims involving a fight between a terminated worker and office security to be barred by the WCA); *Case of Laroque,* 31 Mass.App.Ct. 657, 582 N.E.2d 959, 960 (1991) (finding that a decedent's heart attack after being called at home by his employer two weeks after being fired was not compensable under the WCA).

39. *Larocque,* 582 N.E.2d at 960.

40. *Hinchey v. NYNEX Corp.,* 144 F.3d 134, 146 (1st Cir.1998); *Green v. Wyman–Gordon Co.,* 422 Mass. 551, 664 N.E.2d 808, 813–14 (1996).

41. *Complaint,* paper # 1, ¶ 75.

42. *Def.'s Mem.,* paper # 5, Ex. A, 2.

43. *Id.* at 18

 As the City notes, however, "when a collective bargaining agreement provides a grievance procedure, the general rule is that the remedies specified in the agreement must be exhausted before an employee may resort to the courts." [44] The only exception to this general premise arises when the union fails to represent the employee, or the employer nullifies the grievance procedure. [45]

Luthy does not allege in her complaint that there was any failure by the union to represent her interests, nor does she complain that the City nullified the grievance procedures available to her, so the exemption from the requirement of exhausting the CBA's grievance procedures does not apply here. Instead, Luthy maintains in a sworn statement that she did, in fact, initiate and exhaust the CBA's grievance procedures. [46] The City disagrees and maintains that she failed to avail herself of the CBA's grievance procedures. The court will accept Ms. Luthy's Affidavit, and therefore, the City's Motion to Dismiss Luthy's wrongful termination claim (Count VIII) is DENIED.

## VI. Mass. Gen. Laws ch. 93A.

Mass. Gen. Laws ch. 93A prohibits unfair and deceptive trade practices in the course of a commercial transaction. The applicability of Mass. Gen. Laws ch. 93A to a disputed practice depends on a two

part test: 1) the practice in question must be "an unfair and deceptive practice" and 2) the parties involved must have been engaged in "trade or commerce" in a "business context." [47]

 Addressing the second prong of this inquiry first, a practice is not commercial in nature when it falls outside the "ordinary course of a trade or business." [48] Massachusetts courts have excluded "intra-enterprise" disputes from the ordinary course of a trade or business "because they are more similar to purely private disputes and are not 'commercial transaction[s] ... in the sense required by c. 93A.' " [49] Disputes arising from an employment relationship are "intra-enterprise" disputes for the purposes of Mass. Gen. Laws ch. 93A, and are therefore not "commercial transactions" in the ordinary course of a trade or business. [50] The dispute between Luthy and the City pertains to conduct between an employer and former employee, and as such Count IX against the City is DISMISSED WITH PREJUDICE because it is not a "commercial transaction" covered by Mass. Gen. Laws ch. 93A.

## Conclusion

The City's Motion to Dismiss is ALLOWED IN PART AND DENIED IN PART. Count I is DISMISSED WITH-

---

44. *O'Brien v. New England Telephone and Telegraph Co.*, 422 Mass. 686, 664 N.E.2d 843, 849 (1996).

45. *Azzi v. Western Electric Co.*, 19 Mass.App. Ct. 406, 474 N.E.2d 1166, 1168 (Mass.1985).

46. *Aff. of Heather Luthy*, paper # 8.

47. *State Resources Corp. v. The Architectural Team, Inc.*, 433 F.3d 73, 84 (1st Cir.2005) (quoting *Linkage Corp v. Trustees of Boston University*, 679 N.E.2d 191, 206–207 (Mass. 1997)).

48. *State Resources Corp.*, 433 F.3d at 84 (quoting *Linkage Corp.*, 679 N.E.2d at 206–07).

49. *Linkage Corp.*, 679 N.E.2d at 207 n. 33 (quoting *Szalla v. Locke*, 421 Mass. 448, 657 N.E.2d 1267, 1270 (1995)).

50. *Szalla*, 657 N.E.2d at 1269; *Manning v. Zuckerman*, 388 Mass. 8, 444 N.E.2d 1262, 1266 (1983) ("disputes arising out of the employment relationship between an employer and an employee are not cognizable under c. 93A.").

OUT PREJUDICE. Counts II, III, IV, V, VI, VIII, and IX are DISMISSED WITH PREJUDICE. Count VIII stands. Within 14 days, Plaintiff may amend her complaint to properly plead her theories regarding the City's municipal liability under Count I. An order will issue.