LoConto, PJ.
The plaintiff, Ricky W. Maciorowski (“Maciorowski”), has appealed the trial court’s summary judgment ruling in favor of the defendant, Carl Schwarzenbach (“Schwarzenbach”), claiming that Schwarzenbach failed to prove that he was an employee of the city of Westfield, the Westfield Police Department, or any other department of the city or the Commonwealth, and, as such, that Schwarzenbach does not qualify for immunity from suit under the Massachusetts Tort Claims Act, codified at G.L.c. 258, §2. Maciorowski further contends that the trial court erred in denying his motion to amend his complaint to add a cause of action for intentional tort after it issued its summary judgment ruling. We affirm the allowance of Schwarzenbach’s motion for summary judgment, and reverse the denial of Maciorowski’s motion to amend the complaint.
Maciorowski is a police officer with the Westfield Police Department. On February 19, 2004, the Westfield Police Department conducted a training drill entitled “Active School Shooter Training a/k/a Code White.” Schwarzenbach was a seventeen year old Westfield Police Explorer Post 711 member (“Police Explorer”) who participated as an “armed suspect” in the “Code White” police drill. The Police Explorer Program consisted of young individuals who were interested in police work, who were instructed in police work, and who occasionally assisted with some police work, such as traffic detailing. Due to an insufficient number of police officers available on February 19,2004, the “Code White” drill could not have been conducted without Schwarzenbach’s participation.
*258 In his complaint for negligence against Schwarzenbach, Maciorowski alleged that he suffered injuries during the training drill when Schwarzenbach fired a revolver loaded with “blanks” at Maciorowski’s face from a distance of only two to three feet. Maciorowski’s complaint also states that “the police explorer program was set up and managed by the City of Westfield for prospective candidates for its police force to be familiarized with police tactics and training.” Additionally, Maciorowski sent a “presentment letter,” pursuant to G.L.c. 258, §4, to the mayor of Westfield, alleging “negligent supervision and training with regard to the explorers and or [sic] the preparation and execution of the training exercise.” Maciorowski further applied for and received compensation for his injuries sustained during the training drill in question in accordance with G.L.c. 41, §§100 and 111F.
In support of his Mass. R. Civ. R, Rule 56, motion for summary judgment, Schwarzenbach filed a supporting memorandum of law and several affidavits, including affidavits from Officers Bard and Baginski that set forth in great detail the level of supervision, direction, and control that the police department exercised over its Police Explorers generally and specifically during the “Code White” training drill.[1] Maciorowski’s opposition to summary judgment, which was unsupported by any affidavit, alleged that Schwarzenbach was not a “public employee” and that Schwarzenbach committed an intentional tort. Maciorowski’s counsel waived oral argument on that opposition. The trial judge allowed Schwarzenbach’s summary judgment motion in a written memorandum of law dated October 16, 2008. On October 28, 2008, Maciorowski filed a motion to amend his complaint to include counts for alleged assault, assault and battery, and assault and battery with a dangerous weapon based on information that Maciorowski obtained during Schwarzenbach’s deposition on July 2, 2007. The trial judge denied the motion to amend on July 2, 2009.
1. Summary judgment shall be granted where there are no genuine issues of material fact, and where the moving party is entitled to a judgment as a matter of law. Mass. R. Civ. R, Rule 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence establishing the existence of a genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The court must view the parties’ evidentiary materials “in the light most favorable to the nonmoving party,” Gray v. Giroux, 49 Mass. App. Ct. 436, 438 (2000), and must resolve any doubt as to the existence of factual issues in the nonmovanf s favor. Foley *259 v. Matulewicz, 17 Mass. App. Ct. 1004, 1005 (1984); Knight v. CNA Ins. Cos., 2002 Mass. App. Div. 3, 5.
The Massachusetts Tort Claims Act imposes liability on a “public employer” for any personal injury, death, or property damage caused by the negligent or wrongful act or omission of any “public employee” while acting within the scope of his office or employment in the same manner and to the same extent as a private individual under like circumstances, with certain exceptions. G.L.c. 258, §2. The individual public employee is immune from personal liability.
The test for determining whether an individual is a public employee under G.L.c. 258, §2 is the same as that used to establish whether an agent is a servant for whose negligent acts a principal may be liable under the common law doctrine of respon-deat superior. McNamara v. Honeyman, 406 Mass. 43, 48 (1989). Thus, whether a person is a “public employee” and immune from personal liability depends on whether a master-servant relationship exists, and whether the individual was doing something in furtherance of the master’s business at the time of the incident in question. Id., citing Kelley v. Rossi, 395 Mass. 659, 661 (1985); Konick v. Berke, Moore Co., 355 Mass. 463, 467-468 (1969) (satisfaction of both factors qualifies a person as a “public employee,” as “the law gives the master the right of direction and control”). A “public employee” includes elected or appointed officers or employees of any public employer, whether serving full or part time, temporary or permanent, compensated or uncompensated. G.L.c. 258, §1. Law students who work as volunteers in the office of the counsel to the Governor, volunteer workers in the state hospitals, and volunteer drivers for the Governor may be public employees for the purposes of G.L.c. 258, §1. Opinion of the Attorney General, Rep. AG., Pub. Doc. No. 12, at 89-90 (1983). “The definition of ‘public employee’ indicates that a municipal employer may be liable for the negligent conduct of temporary or volunteer workers such as hospital aides, volunteer fire department personnel, or special or auxiliary police officers.” D.A. RANDALL & D.E. FRANKLIN, MUNICIPAL LAW AND PRACTICE §39.3, at 127 n.3 (5th ed. 2006).
Maciorowski’s opposition did not refute the specific facts set forth in the Rule 56 affidavits submitted by Schwarzenbach. Maciorowski contended that the Westfield Police Department is not a “public employer,” as defined in G.L.c. 258, §1, because the city police commission, rather than the police department, has the authority to hire police officers. That argument contradicts the evidence on record, including Maciorowski’s own implicit admissions to the contrary. For example, Maciorowski stated in his written opposition that he was “a policeman in the employ of the city of Westfield.” He also averred in his complaint that “the police explorer program was set up and managed by the city of Westfield.” Maciorowski submitted a “presentment letter” to the city of Westfield in accordance with G.L.c. 258, §§2 and 4, which govern tort claims and indemnity liabilities against “public employers” for damages caused by a “public employee.” Further, Maciorowski sought and received compensation for his injuries pursuant to G.L.c. 41, §§100 and 111F, which provide for leave without loss of pay and indemnification for medical costs resulting from injuries sustained “while [a police officer] was acting in the performance and within the scope of his duty without fault of his own.” As pointed out by the trial judge, “ [t] he plaintiff cannot repeatedly assert that as a police officer, he is an employee of the City of Westfield and a public employee, and at the same time argue that the same Westfield *260 Police Department is not a public employer.”
In addition, the affidavits submitted by Schwarzenbach and unrefuted by Maciorowski established the requisite relationship between Schwarzenbach and the Westfield Police Department to quality Schwarzenbach as a “public employee.” Officer Bard screened all applicants for the Police Explorer Program and determined the eligibility for an applicant’s admittance into the program. Officer Bard also scheduled the days and hours of service, and determined the work assignments for the Police Explorers. He, or another officer, always supervised or controlled the actions of the Police Explorers. The Westfield Police Department also provided the Police Explorers with equipment necessary to fulfill an assignment. Officer Baginski supervised Schwarzenbach and the other Police Explorers during the “Code White” drill. He gave Schwarzenbach a “walk through of the school” and informed Schwarzenbach of the chain of events that would occur during the drill, where Schwarzenbach should position himself, and when, and at what distance, Schwarzenbach was to fire his weapon. The foregoing facts demonstrate that a master/servant relationship existed between Schwarzenbach and the Westfield Police Department, and that the Westfield Police Department controlled the actions of the Police Explorers.
Courts have taken the approach that the scope of an employee’s employment should not be construed narrowly. Clickner v. City of Lowell, 422 Mass. 539, 541-542 (1996); Howard v. Town of Burlington, 399 Mass. 585, 590-591 (1987). An employee’s conduct is within the scope of his employment if (1) it is of the kind he is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is motivated, at least in part, by a purpose to serve the employer. Jalbert v. Grautski, 554 F. Supp. 2d 57, 71 n.19 (D. Mass. 2008); Clickner, supra at 542; Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 859 (1986).
With respect to this case, Schwarzenbach’s participation in the “Code White” drill was the type of volunteer service for which the Police Explorer Program was intended. Additionally, the incident in question occurred during the course of a training drill in which Officer Bard required Schwarzenbach to attend at a time and place designated by the police officer and in accordance with a script designed by the Westfield Police Department. The fact that Schwarzenbach fired the pistol at Maciorowski from a distance different than that from which Officer Baginksi instructed him to shoot does not negate the fact that Officer Baginksi authorized Schwarzenbach to be where Schwarzenbach was at that point in the training scenario. It is evident that only authorized persons could participate in the “Code White” drill, excluding even those Police Explorers whom Officer Bard did not assign to the specific training exercise.
Although the training drill failed to proceed as planned, Schwarzenbach did not attempt to fire his weapon until the point in time at which Officer Baginski instructed him to do so, demonstrating that the Police Department maintained control over Schwarzenbach’s actions throughout the drill. Significantly, the “Code White” drill would not have been possible without Schwarzenbach’s participation due to an insufficient number of police officers in attendance.
Based on the foregoing analysis, we conclude that there was no error in the trial judge’s determination that Schwarzenbach’s actions at issue were within the scope of his employment as a Police Explorer and in furtherance of the Westfield Police *261 Department's business of conducting a training drill. Thus, there was no genuine issue of material fact in dispute as to whether Schwarzenbach, as a member of the Westfield Police Explorer Post 711, was a public employee of and acting within the scope of his employment with the Westfield Police Department at the time of the incident in question, and was immune from personal liability. Summary judgment for Schwarzenbach was properly allowed.
2. Schwarzenbach’s deposition was taken by Maciorowski’s counsel on July 2, 2007. Soon thereafter, on August 15,2007, Schwarzenbach moved for summary judgment. The hearing on that motion was conducted on September 5,2007. The motion was endorsed as allowed by the court on October 17,2008. Upon receiving the summary judgment ruling against him, Maciorowski filed his Mass. R. Civ. E, Rule 15, motion to amend the complaint on October 28, 2008. It is Schwarzenbach’s deposition response to the question of whether he pulled the trigger of the gun intentionally that is apparently the basis for the motion to amend the complaint to add counts for intentional torts for assault and battery, assault and battery with a dangerous weapon, and assault. To this question, Schwarzenbach responded that “that’s the only way the gun is going to off, yes [sic],” and that “[t]here is no such thing as an accidental discharge.” Schwarzenbach argues that Maciorowski’s motion to amend the complaint is barred by the doctrine of claim preclusion, which bars further litigation after the entry of a valid, final judgment conclusive on all parties. Heacock v. Heacock, 402 Mass. 21, 23 (1988).
“[Claim preclusion] presupposes that a claimant has had an opportunity to assert his claims against a given defendant, and either has failed to assert those claims or has asserted the claims and had them adjudicated adversely.” Day v. Kerkorian, 61 Mass. App. Ct. 804, 811 (2004). As stated by the Appeals Court in Boyd v. Jamaica Plain Co-op. Bank, 7 Mass. App. Ct. 153 (1979):
[T]he entry of a ‘valid and final judgment extinguishes ... all rights of a plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.’RESTATEMENT (SECOND) OF JUDGMENTS §61(1) (Tent. Draft No. 5, 1978) [2] This principle will be applied to extinguish a claim even though the plaintiff is prepared in the second action to present evidence, grounds, or theories of the case not presented in the first action or to seek remedies or forms of relief not demanded in the first action. This policy promotes judicial economy and has been applied by our courts to bar successive actions.
Id. at 163.
The doctrine of claim preclusion is inapplicable in this case. Maciorowski did not attempt to bring another action after a valid and final judgment of a previous case, but instead requested an amendment to the existing complaint. The courfs resolution of the summary judgment motion was based upon Schwarzenbach’s status as a public employee, immune from liability for his negligent conduct, if any. No such *262 immunity exists for intentional torts committed by a public employee. Luthy v. Prouty, 464 F. Supp. 2d 69, 76 (D. Mass. 2006). The motion for summary judgment did not adjudicate the validity of the claim of negligence, and did not require an examination of the material facts for its conclusion. The public employment status of Schwarzenbach is irrelevant to the resolution of the claim of intentional torts. Whether the amended complaint can survive summary judgment scrutiny is beyond our limited review of the correctness of the trial judge’s denial of Maciorowski’s motion to amend. Rule 15(a) is permissive, and provides that “leave shall be freely given when justice so requires.” Applying that standard in this case, we conclude that the motion to amend should have been allowed.
Accordingly, the allowance of Schwarzenbach’s motion for summary judgment is affirmed. The denial of Maciorowski’s motion to amend the complaint is reversed.
So ordered.

 Despite the fact that Officer Baginksi gave Schwarzenbach specific instructions about where to position himself and when and from what distance to shoot at the Entry Team during the “Code White” drill, Schwarzenbach testified that the drill did not go as planned, and the police officers were closer to him than he expected when he fired at them approximately five feet away.

 See RESTATEMENT (SECOND) OF JUDGMENTS §24(1), at 196 (1982).