# United States Court of Appeals
## For the First Circuit

No. 05-1381

STATES RESOURCES CORP.,

Plaintiff, Appellee,

v.

THE ARCHITECTURAL TEAM, INC.,

Defendant, Appellant,

MICHAEL CAPIZZI; CATHERINE CAPIZZI; GARRETT, INC.,

Defendants, Appellees,

JOHN CONNOLLY, JR.; MASSACHUSETTS DEPARTMENT OF REVENUE;
JAMES GRUMBACH; KEVIN DUFFY,

Defendants.

No. 05-1473

STATES RESOURCES CORP.,

Plaintiff, Appellant,

v.

MICHAEL J. CAPIZZI; CATHERINE R. CAPIZZI;
THE ARCHITECTURAL TEAM, INC.;
GARRETT, INC.; JOHN CONNOLLY JR.;
MASSACHUSETTS DEPARTMENT OF REVENUE; KEVIN DUFFY,

Defendants, Appellees,

JAMES GRUMBACH,
Defendant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

——————————

Before

Lipez, Circuit Judge,
Coffin, Senior Circuit Judge,
and Carter,[*] Senior District Judge.

——————————

Jordan Ring, with whom Ring Law Firms was on brief, for appellant/cross-appellee.
John A. Doonan, with whom is Doonan, Graves & Longoria, L.L.C. was on brief, for appellee/cross-appellant.

——————————

December 20, 2005

——————————

——————

[*]Of the District of Maine, sitting by designation.

**LIPEZ**, <u>Circuit Judge</u>.  This case began as an interpleader action to determine the proper distribution of surplus proceeds from a foreclosure sale conducted by States Resources Corporation ("SRC").  To that end, SRC named several defendants with interests in the foreclosed property, including The Architectural Team, Inc. ("TAT"), a junior lienholder.  TAT filed counterclaims against SRC, alleging that SRC mishandled the foreclosure sale and breached its fiduciary duty to TAT.  The district court granted summary judgment in favor of SRC, denied a motion by TAT to add a counterclaim, and denied a motion by SRC to strike portions of an affidavit filed by TAT.  Both parties appealed.  We affirm.

## I.

This case has a complex factual and procedural history that is discussed in detail in the district court's opinion. <u>See</u> <u>States Res. Corp.</u> v. <u>Capizzi</u>, No. 04-10095, 2005 U.S. Dist. LEXIS 956 (D. Mass. Jan. 20, 2005).  We relate only those facts relevant to the questions presented on appeal.

**A. States Resources Corporation's Interest in the Capizzi Property**

In October 1988, Michael Capizzi ("Capizzi") signed a $750,000 adjustable-rate note, secured by a $750,000 mortgage on his property at 236 Lincoln Road, Lincoln, MA, memorializing a loan from Winchendon Savings Bank ("WSB") for use in developing his property.  After WSB became insolvent, other institutions obtained and assigned the mortgage until SRC became the mortgagee in 1998.

-3-

SRC first initiated foreclosure proceedings against Capizzi in state court in January 1999, alleging that he was in default on the note. Due to a series of partial payments and defaults by Capizzi and his wife, Catherine Capizzi, SRC cancelled and recommenced foreclosure proceedings against Capizzi several times. The Capizzis filed several lawsuits against SRC and bankruptcy petitions to prevent the foreclosure, none of which was successful. During the course of a state court action filed by the Capizzis against SRC, SRC removed the case to federal court based on diversity jurisdiction. On June 9, 2003, the district court granted a motion by SRC for default judgment against the Capizzis for their failure to plead or otherwise defend against SRC's counterclaims, and entered judgment in favor of SRC for $875,203.38.

**B.  The Architectural Team, Inc.'s Interest in the Capizzi Property**

In 1989, TAT filed a lawsuit against the Capizzis in Suffolk Superior Court, regarding a dispute over unpaid fees. In 1994, TAT obtained and duly recorded a $600,000.00 attachment on the Capizzi property. The lawsuit went to trial and the court entered a judgment in favor of TAT for $200,254.00, with interest accruing from the 1989 filing date. See The Architectural Team, Inc. v. Capizzi, No. 89-4479-D, slip op. at 3-4 (Mass. Super. Feb. 26, 1999), aff'd, 782 N.E.2d 1136 (Mass. App. Ct. 2003). On

September 24, 2003, TAT obtained and recorded a $541,152.81 execution on its judgment from the court.

## C. The Foreclosure Auctions and Disbursement of Proceeds

After obtaining its default judgment against the Capizzis, SRC made plans to sell the property. SRC hired Garrett, Inc. and its president, Garrett Healy, to conduct the foreclosure auction proceedings.

At the first foreclosure auction, the highest bid of $2,000,000.00 came from Linda Micu. Micu signed a "Memorandum of Terms and Conditions for the Purchase at the Mortgagee's Foreclosure Sale" as "Linda Micu or Assigns" and provided Garrett with a $5,000.00 deposit. However, Micu, who turned out to be a straw person for Catherine Capizzi, did not purchase the property and forfeited her deposit. Micu left Garrett a phone message stating that "we have had a little bump in the road here financially and we are now having a problem getting financing... but I would at least like to give you the courtesy to let you know at this point we cannot proceed with this and hopefully you can get this thing going and someone else can take advantage of what I think is a pretty good deal."

After Micu's offer fell through, SRC scheduled a second foreclosure auction for September 26, 2003. SRC published a "Notice of Mortgagee's Sale of Real Estate," which contained a legal description of the property, in The Concord Journal on

September 4, 11, and 18, 2003. At the direction of SRC, Garrett also publicized the auction through telemarketing, mailings, the internet, and "display advertisements" in The Boston Globe on September 14 and 21, 2003. The display advertisements contained incorrect information, allegedly obtained from town records, understating the acreage of the property and the number of bedrooms, bathrooms, and fireplaces it contained.

In early August 2003, Garrett received a letter from Leonard Florence, who offered to buy the property for $2,000,000.00 and provided a deposit of $50,000.00. Garrett informed counsel for SRC of the offer and deposit. SRC's attorney later informed Garrett that, based on his interpretation of state law, SRC could not accept Florence's offer because it was made outside of the public auction process. Garrett rejected Florence's offer and asked him whether he would like to participate in the upcoming auction. Florence declined, telling Garrett that he did not have the time to pursue the property. Garrett returned the deposit to Florence. Neither SRC nor Garrett informed any of the other interest holders of the offer by Florence.

On September 26, 2003, Garrett conducted the second foreclosure auction. Kevin Duffy made the highest bid of $1,200,000.00. Duffy and Garrett executed a "Memorandum of Terms and Conditions For the Purchase at Mortgagee's Foreclosure Sale,"

which included a provision stating that TAT had a $600,000.00 real estate lien on the property.

At the time of the final foreclosure auction of the Capizzis' property, SRC was owed $932,630.87, which it collected from the $1,200,000.00 proceeds. In November 2003, counsel for SRC and TAT negotiated the disbursement of the surplus auction proceeds. On November 11, 2003, SRC sent TAT a check for $210,096.33 in partial satisfaction of TAT's junior lien. After sending the check, SRC sent TAT an indemnification agreement pursuant to which TAT would indemnify and hold harmless SRC "from any and all actions, proceedings, claims, demands, costs, damages and expenses . . . in connection with or arising out of the payment." TAT never executed the indemnification agreement.

## D. Procedural History

SRC initiated an interpleader action in federal district court on January 15, 2004, seeking a judicial determination regarding the proper apportionment of proceeds from the September 26, 2003 foreclosure sale of the Capizzis' property. Although SRC's initial judgment against the Capizzis was satisfied by the proceeds of the sale, SRC alleged that it had accrued additional fees and costs due to the lawsuits filed by the Capizzis and the payment owed to the auctioneer for his services. SRC named several parties with interests in the proceeds as defendants, including TAT. On March 17, 2004, TAT filed an answer; affirmative defenses;

cross-claims against Catherine Capizzi; and counterclaims against SRC, seeking an accounting and alleging unjust enrichment and various other defects in foreclosure. On April 20, 2004, TAT filed an amended answer, affirmative defenses, cross-claims, and counterclaims. On July 8, 2004, TAT filed a motion to amend its answer to add a counterclaim against SRC and Garrett under Mass. Gen. Laws ch. 93A for unfair and deceptive business practices, based on information regarding the Florence offer that TAT alleges it first learned about through discovery. On October 6, 2004, SRC filed a motion for partial summary judgment, which TAT opposed.

On January 20, 2005, the district court granted SRC's motion for partial summary judgment and dismissed TAT's counterclaims, denied TAT's motion to amend its answer to add a counterclaim, and denied SRC's motion to strike portions of an affidavit filed by TAT. Shortly thereafter, SRC filed a motion for a final judgment, describing a proposed disbursement of the surplus funds. On February 4, 2005, the district court issued the final judgment, adopting SRC's disbursement proposal and ordering SRC to disburse $48,459.20 to Garrett, Inc. for its auctioneer services and $13,813.60 to SRC for costs and attorneys fees incurred in the interpleader action and related bankruptcy litigation. TAT and SRC appealed.

## A. Subject Matter Jurisdiction

As a preliminary matter, we dispatch SRC's argument that the district court lacks subject matter jurisdiction over some of TAT's claims under the Rooker-Feldman doctrine. "Under the Rooker-Feldman doctrine, federal district courts lack jurisdiction over 'federal complaints . . . [that] essentially invite[] federal courts of first instance to review and reverse unfavorable state-court judgments.'" Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 20 (1st Cir. 2005) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 125 S. Ct. 1517, 1521 (2005)). SRC asserts that the district court does not have subject matter jurisdiction over TAT's claims that SRC acted in bad faith and without reasonable diligence in conducting the foreclosure sale because a state court dismissed similar claims made by the Capizzis in a suit the Capizzis filed against SRC. Although TAT was not a party to that suit, SRC argues that TAT's claims regarding the foreclosure sale are "inextricably intertwined" with the issues adjudicated in the state court proceedings and that granting relief to TAT would be effectively holding that the state court was wrong in its decision.

SRC's argument is incorrect. The Supreme Court has clarified the scope of the Rooker-Feldman doctrine:

> The Rooker-Feldman doctrine . . . is confined to cases of
> the kind from which the doctrine acquired its name: cases

> brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

Exxon Mobil Corp., 125 S. Ct. at 1521-22. SRC's argument thus fails for two reasons. First, as noted, TAT was not a party to the initial action. Therefore, TAT is not a "state-court loser[] complaining of injuries caused by state-court judgments." Id.; see also Valenti v. Mitchell, 962 F.2d 288, 297 (3d Cir. 1992) ("We have found no authority which would extend the Rooker-Feldman doctrine to persons not parties to the proceedings before the state supreme court.").

Second, as we have recently stated, "[i]f federal litigation is initiated before state proceedings have ended, then -- even if the federal plaintiff expects to lose in state court and hopes to win in federal court -- the litigation is parallel, and the Rooker-Feldman doctrine does not deprive the court of jurisdiction." Federación de Maestros de P.R., 410 F.3d at 24 (emphasis in original). In this case, SRC is relating TAT's claims against it here to proceedings filed by the Capizzis in March 2004 in the Middlesex Superior Court. Since the state court action referenced by SRC was not yet filed when SRC filed its federal district court action in January 2004, and was still pending when TAT answered with its counterclaims in March 2004, the Rooker-

-10-

<u>Feldman</u> doctrine does not deprive the district court of subject matter jurisdiction over those claims.

**B.  Motion for Summary Judgment**

"We review a district court's grant of summary judgment <u>de</u> <u>novo</u>, viewing the facts in the light most favorable to the nonmovant." <u>Hodgkins</u> v. <u>New England Telephone Co.</u>, 82 F.3d 1226, 1229 (1st Cir. 1996).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if "the evidence is such that a reasonable jury <u>could</u> resolve the point in favor of the nonmoving party." <u>NASCO, Inc.</u> v. <u>Public Storage, Inc.</u>, 29 F.3d 28, 32 (1st Cir. 1994) (emphasis in original) (citation and internal quotation marks omitted).  A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law." <u>Santiago-Ramos</u> v. <u>Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000).  "We may affirm a summary judgment decision on any basis apparent in the record." <u>Uncle Henry's, Inc.</u> v. <u>Plaut Consulting Co.</u>, 399 F.3d 33, 41 (1st Cir. 2005) (citing <u>Fabiano</u> v. <u>Hopkins</u>, 352 F.3d 447, 452 (1st Cir. 2003)).

TAT argues that the district court erred in granting SRC's summary judgment motion and finding no genuine issue as to

-11-

any material fact regarding SRC's compliance with its fiduciary duties to TAT as a mortgagee conducting a foreclosure sale under Massachusetts law. To support its breach of fiduciary duties claim, TAT focuses on the district court's determinations regarding the adequacy of notice and advertising of the property for sale, the adequacy of the price obtained, and SRC's handling of the Micu bid and Florence offer. We address each issue in turn.

1. Adequacy of Notice and Advertising

TAT argues that SRC violated its fiduciary duties under Massachusetts law by publishing inaccurate "display advertisements" in The Boston Globe. These advertisements understated the acreage (listing two-and-a-half acres instead of six) and the number of bedrooms, bathrooms, and fireplaces.

Statutory requirements for foreclosure proceedings are governed by Mass. Gen. Laws ch. 183, § 21 (defining the "statutory power of sale") and ch. 244, § 14 (governing notice of foreclosure proceedings). As TAT concedes, SRC satisfied statutory notice requirements by publishing timely notice in The Concord Journal, and the statute does not require additional advertising or notice. See Mass. Gen. Laws ch. 244, § 14.

Beyond compliance with statutory terms, however, a mortgagee also owes a fiduciary duty to lienholders of the property. "In executing the power of sale, the [mortgagee], in

-12-

addition to a literal compliance with the terms of the power, [is] bound to exercise good faith and to put forth reasonable diligence to protect the interests of the mortgagor," Atlas Mortgage Co. v. Tebaldi, 24 N.E.2d 554, 557 (Mass. 1939), or "those claiming in his right, including those holding junior encumbrances or liens." Sandler v. Silk, 198 N.E. 749, 751 (Mass. 1935). There may be circumstances where a mortgagee's advertisement of inaccurate information about a property is evidence of a lack of good faith or reasonable diligence, even if those inaccuracies occurred in notices beyond the minimal publication notice required by statute. Cf. Deslauries v. Shea, 13 N.E.2d 932, 936 (Mass. 1938) ("A mortgagee ordinarily is not required . . . to give notice of a foreclosure sale other than by publication. But there may be circumstances in which failure to give further notice is 'evidence that good faith was not used to obtain the best reasonable possible price.'") (citations omitted).

However, there is no evidence of bad faith of lack of diligence here. SRC asserts that it obtained the inaccurate information given to Garrett for the display advertisements from Town of Lincoln records. TAT does not contest this assertion and does not allege that SRC had an improper motive for the inaccuracies. SRC was not the buyer of the property. No allegations have been made that SRC was alerted to the inaccuracies and refused to remedy them. As the district court concluded, "[i]f

-13-

anything, the reasonable inference to be drawn from SRC's arranging for [advertisements in The Boston Globe] was that it was attempting to stir up interest among potential buyers of the Property and thereby generate competitive bidding at the auction." States Res. Corp., 2005 U.S. Dist. LEXIS 956, at *33. Therefore, SRC did not violate any fiduciary duty it owed to TAT.

Without evidence of self-dealing, or evidence that SRC might have a motive for undermining the foreclosure sale, or any other showing of misconduct, there is no genuine issue of material fact on this claim. See FDIC v. Elder Care Servs., 82 F.3d 524, 527 (1st Cir. 1996) ("Normally, a party suggesting fraud or bad faith is expected to point to the misconduct (lies, rigged account books, self-dealing by a fiduciary) that reflects the bad faith or constitutes the fraud. True, on some occasions the inference of fraud or bad faith might be compelled by the combination of motive and outcome; but here motive is utterly lacking . . . .") (emphasis in original).

2. Adequacy of Price Obtained

TAT emphasizes that the $1,200,000.00 price paid in the second auction was 40% lower than the $2,000,000.00 bid offered independently by Micu, who could not complete the sale, and by Florence, who made his offer outside of the bidding process. TAT argues that this "reduction" in price is evidence of SRC's lack of reasonable diligence and good faith.

-14-

Under Massachusetts law, "[a]bsent evidence of bad faith or improper conduct . . . mere inadequacy of price will not invalidate a sale unless it is so gross as to indicate bad faith or lack of reasonable diligence." Resolution Trust Corp. v. Carr, 13 F.3d 425, 430 (1st Cir. 1993) (emphasis in original) (internal quotations and citations omitted); see also Seppela & Aho Contr. Co., Inc. v. Petersen, 367 N.E.2d 613, 620 (Mass. 1977) (finding that a showing that foreclosure sale price was less than fair market value was not enough to support any basis of liability).

Generally, to determine whether a sales price is grossly inadequate, the price is compared with a fair market value appraisal of the property. See Elder Care Servs., 83 F.3d at 528. The $2,000,000.00 comparison figure stated by TAT is based on the Micu bid and Florence offer and not on an appraisal of the fair market value of the property. TAT has not offered any such appraisal information. Even assuming a comparison of a previous uncompleted bid and final sale price is appropriate, other courts have found similarly-sized differences to be not "so gross" as to indicate bad faith or a lack of reasonable diligence. See Elder Care Servs., 83 F.3d at 528 (disparity between estimated liquidation price of $2,000,000 and later sales price of $300,000 not so gross as to withstand summary judgment motion); Resolution Trust Corp., 13 F.3d at 430 (disparity between appraisal price of $350,000 and sales price of $195,000 not enough to withstand a

-15-

summary judgment motion); <u>Fairhaven Savings Bank</u> v. <u>Callahan</u>, 462 N.E.2d 112, 114 (Mass. 1984) (purchase price of $10,000 on property securing a $40,000 debt not so inadequate as to constitute a breach of fiduciary duty as a matter of law); <u>Sher</u> v. <u>South Shore Nat'l Bank</u>, 274 N.E.2d 792, 794 (Mass. 1971) (disparity between alleged fair market value of $52,500 and sales price of $35,500 not so gross as to withstand a motion to dismiss); <u>Cambridge Sav. Bank</u> v. <u>Cronin</u>, 194 N.E. 289, 289-90 (Mass. 1936) (disparity between alleged fair market value of $51,000 and sales price of $20,000 warranted direct verdict against the challenger of the sale).

3.   SRC's Handling of the Micu Bid and Florence Offer

TAT argues that SRC violated its fiduciary duty by failing to facilitate the transfer of Micu's interest to Florence and failing to disclose the Florence offer to TAT. TAT alleges that Micu expressed the desire to assign her contract rights to another buyer through her phone message to Garrett and her signature on the sales contract as "Linda Micu or Assigns". TAT argues that, given SRC's knowledge of Micu's alleged desire to assign, SRC should have assisted Micu in assigning her rights under the sales contract to Florence, or, at the very least, told TAT of Florence's offer.

We do not find any support in the record for TAT's contention that Micu expressed to SRC her desire to assign her rights. The fact that Micu signed the contract "Linda Micu or

-16-

Assigns" does not constitute a request that SRC help her assign her rights to another party. Micu's telephone message, rather than being a request for assignment assistance as TAT contends, is merely notification of and an apology for her failure to complete the sale. Micu took no action at any time to assign her rights to a third party.

Generally, Massachusetts law requires sale of foreclosure property by public auction. Mass. Gen. Laws ch. 183, § 21. "[I]n mortgage foreclosure sales, if the highest bidder fails to pay, the trustee of the property may declare that the next highest bidder may purchase the property, may resell the property promptly, or may readvertise the sale for another day." 146 Dundas Corp. v. Chemical Bank, 511 N.E.2d 520, 524 (Mass. 1987). Courts have explained that efforts to "resell the property promptly" must take place at the public auction, not through a private sale which is not advertised to the public. See id. at 524 (collecting cases). After being notified of the Florence offer, SRC's attorney researched the issue and concluded, based on his interpretation of state law, that SRC could not accept Florence's offer because it was outside the foreclosure auction process. Less than two months after the first auction took place, SRC held the second foreclosure auction and sold the property to the highest bidder at the auction. Based on these facts, SRC did not violate its duty of good faith and reasonable diligence by failing to arrange a sale to Florence.

Nor did SRC violate its fiduciary duties by failing to discuss the Florence offer with TAT. A mortgagee's fiduciary duty to junior lienholders generally requires that the mortgagee inform parties whom it knows to be interested in buying the property of an upcoming sale. See Sandler, 198 N.E. at 751 (finding that failure to give notice of sale to a party with a pre-mortgage attachment who had expressed her intention to buy was evidence of bad faith); Danielczuk v. Ferioli, 388 N.E.2d 724 (Mass. App. Ct. 1979) (finding disputed reasons for mortgagee's failure to meet with prospective bidder prior to foreclosure sale were material to question of compliance with fiduciary duties); see also In re LaPointe, 253 B.R. 496, 500 (1st Cir. B.A.P. 2000) (upholding bankruptcy court's finding of lack of reasonable diligence by foreclosing bank for failing to provide notice of sale to a party it knew to be interested in buying). It is undisputed that SRC informed Florence of the upcoming auction.

TAT argues that a mortgagee has, in addition to its duty to inform interested buyers of an upcoming auction, a duty to inform junior lienholders of the existence of interested buyers. However, TAT fails to provide any case law to support this assertion or any meaningful explanation of why such a duty would protect TAT's interest in the property in this case. TAT argues that, if it had been informed of the Florence offer, it "may have been able to consummate the sale of the Property to him." However,

TAT does not explain how it could have facilitated a sale to Florence, nor has it presented any evidence supporting the inference that it could have done so.

Presumably, circumstances may exist where a court could infer bad faith from a mortgagee's failure to mention an offer of sale to lienholders. If, for example, a mortgagee was secretive or evasive in discussing the details of an upcoming auction with prospective buyers and purchased the property itself, its failure to disclose to junior lienholders that more substantial offers had been proposed by other buyers would certainly be suspect. Cf. Bon v. Graves, 103 N.E. 1023, 1026 (Mass. 1914) (noting that a mortgagee's evasiveness with interested buyers, along with other circumstances, showed that he was acting in the interest of buying the property at his own price rather than the highest price competitive bidding could bring). However, in this case, SRC fully informed Florence of the opportunity to bid on the property through the public auction. Furthermore, SRC was not the buyer and TAT does not allege that SRC was colluding with the buyer to lower the sales price. Thus, no breach of its fiduciary duties can be inferred from SRC's failure to discuss the Florence offer with TAT.

## C. Motion to Amend Answer and Add Counterclaim

A denial of a motion to amend under Fed. R. Civ. P. 15(a) is generally reviewed for abuse of discretion. See Hatch v. Dept. for Children, Youth & Families, 274 F.3d 12, 19 (1st Cir. 2001).

Rule 15(a) states that "leave shall be freely given when justice so requires." Accordingly, "unless there appears to be an adequate reason for the denial (e.g., undue delay, bad faith, dilatory motive on the part of the movant, futility of the amendment), we will not affirm the denial." Hatch, 274 F.3d at 19.

In this case, TAT filed its motion to amend its answer to add a counterclaim against SRC under Mass. Gen. Laws ch. 93A for unfair and deceptive business practices. In its decision and order granting summary judgment for SRC on TAT's counterclaims, the district court also denied the motion to amend as futile, finding that TAT's arguments "relate[d] either to the[] insufficient claims or to the factual allegations underlying them" involved in its other counterclaims, which the district court had already rejected. We therefore analyze whether TAT's proposed amendment is properly characterized as futile. See Hatch, 274 F.3d at 19.

As a preliminary matter, SRC argues that relief under Mass. Gen. Laws ch. 93A is not available in this case because TAT "puts forth no allegations that a commercial transaction took place between SRC and TAT." Under Massachusetts law, whether ch. 93A applies to an "interaction between two parties requires a dual inquiry: first, the court assesses whether the interaction is 'commercial' in nature, and second, it evaluates whether the parties were both engaged in 'trade or commerce,' and therefore

-20-

acting in a 'business context.'" Linkage Corp. v. Trustees of Boston Univ., 679 N.E.2d 191, 206-7 (1997).

An interaction is not commercial in nature if it is a "purely private" intra-enterprise interaction, i.e., "where the undertaking is not 'in the ordinary course of a trade or business.'" Linkage Corp., 679 N.E.2d at 207 n.33 (citation omitted). Such interactions include "disputes stemming from an employment relationship, disputes between individual members of a partnership arising from partnership business, and transactions and disputes between parties to a joint venture and between fellow shareholders." See id. (citing Szalla v. Locke, 657 N.E.2d 1267 (Mass. 1995)).

The dispute between SRC and TAT does not appear to be purely private. While SRC and TAT do have a fiduciary relationship, SRC's handling of the foreclosure auction was not an intra-enterprise transaction but the management of the sale of a property through public auction. See Szalla, 657 N.E.2d at 1270 (noting that sales generally offered to the public are included in the statutory definition of commerce).

However, we need not decide this issue. Assuming arguendo that the interaction between SRC and TAT regarding the foreclosure sale is not generally barred from the application of ch. 93A, we find that the district court's decision to deny the motion to amend should still be affirmed.

-21-

"Chapter 93A is 'a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights.' The relief available under c. 93A... 'is neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitations of preexisting causes of action.' It 'makes conduct unlawful which was not unlawful under the common law or any prior statute.'" Kattar v. Demoulas, 739 N.E.2d 246, 257 (Mass. 2000) (citations omitted). However, some form of deceptive or unfair conduct must be alleged. See Mass. Gen. Laws ch. 93A, § 2 (declaring "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful). "Chapter 93A does not define what constitutes an unfair or deceptive act or practice . . . . [U]nfair or deceptive conduct is best discerned from the circumstances of each case." Kattar, 739 N.E.2d at 257 (citations and internal quotation marks omitted).

To supports its claim for ch. 93A relief, TAT asserts that SRC should have accepted or disclosed the Florence offer in an effort to effectuate a sale. However, as the district court concluded in granting summary judgment for SRC on TAT's breach of fiduciary duty claim, there was nothing unfair or deceptive about SRC's conduct, which it pursued for the purpose of complying with state law. That summary judgment ruling adequately demonstrates the futility of TAT's motion to amend.

-22-

Focusing on the consequences of SRC's handling of the Florence offer rather than the conduct itself, TAT argues that SRC's conduct was unfair because it caused substantial injury to TAT. See Morrison v. Toys 'R' Us, Inc., 806 N.E.2d 388, 392 (Mass. 2004) (noting that "'a practice or act will be unfair under [ch. 93A] if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people'") (citation omitted). However, the injury that TAT asserts it has suffered -- the loss of "hundreds of thousands of dollars as a result of the diminution in sales price from $2 million to $1.2 million" -- is not a result of SRC's conduct, but is a consequence of the foreclosure process and its requirements. The property was sold to the person with the highest bid at the second auction. SRC invited Florence to participate in the auction, but Florence declined. As TAT based its allegations of wrongdoing under ch. 93A entirely on SRC's handling of the Florence offer, its motion to amend was futile, and the district court properly denied it.

## III.

In its cross-appeal, SRC argues that the district court erred by not requiring TAT to disgorge the funds it received from the auction proceeds given its failure to indemnify SRC as per an indemnification agreement. In response, TAT argues that SRC failed

-23-

to adequately raise the indemnification enforcement argument before the district court.  SRC asserts that it adequately raised the argument by (a) alleging in the complaint that SRC disbursed funds to TAT in reliance on TAT's representation that it would indemnify SRC and (b) arguing in its Memorandum in Support of its Motion for Partial Summary Judgment that "'by accepting and negotiating the payment, TAT agreed to the terms of the contract and waived any challenge it may have to the distribution of surplus funds.'"

"This circuit religiously follows the rule that issues not presented to the district court cannot be raised on appeal." Ouimette v. Moran, 942 F.2d 1, 12 (1st Cir. 1991).  "Merely mentioning an issue in a pleading is insufficient to carry a party's burden actually to present a claim or defense to the district court before arguing the matter on appeal." Violette v. Smith & Nephew Dyonics, 62 F.3d 8, 11 (1st Cir. 1995).

SRC did not adequately press the indemnification enforcement argument before the district court.  SRC mentioned the indemnification agreement in its memorandum on summary judgment only in support of its argument that "TAT is estopped from challenging the distribution of post foreclosure funds" and "waived any challenges."  Nowhere in its memorandum did SRC argue, as it does on appeal, that the district court should require TAT to "disgorge surplus funds it received" to SRC.  Notably, SRC also failed to mention this claim in its motion for final judgment,

-24-

after the district court specifically requested that SRC file "a proposal for final judgment resolving any remaining issues." State Res. Corp., 2005 U.S. Dist. LEXIS at *60. SRC did not press this claim in the district court and therefore cannot seek review on the basis of it now. See G.D. v. Westmoreland School Dist., 930 F.2d 942, 950 (1st Cir. 1991) ("[A]n appellant cannot evade the scrutiny of the district court nor can he surprise the court on appeal with a new claim in order to create essentially a new trial.").[1]

The decision of the district court is **affirmed**. Each party shall bear its own costs.

**So ordered**.

---

[1]SRC also argues that the district court erred by denying its motion to strike inadmissible portions of an affidavit submitted by TAT in support of its opposition to SRC's motion for partial summary judgment. The district court acknowledged SRC's arguments that portions of the affidavit in question failed to demonstrate requisite personal knowledge and included inadmissible statements. However, the district court denied SRC's motion as moot, since summary judgment was granted in favor of SRC and the affidavit was submitted in support of TAT's opposition to SRC's motion for summary judgment. That mootness ruling was correct. Since we have affirmed the district court's summary judgment ruling for SRC on appeal, there is also no need for us to further address the district court's ruling on the motion to strike.