# United States Court of Appeals
## For the First Circuit

No. 05-2744

UNITED STATES,

Plaintiff-Appellee,

v.

6 FOX STREET, WINDHAM, NEW HAMPSHIRE, LAND AND BUILDINGS WITH ALL
APPURTENANCES AND IMPROVEMENTS THEREON,
OWNED BY TIMOTHY BISHOP; ET AL.

Defendants In Rem.

TIMOTHY BISHOP

Claimant-Appellant

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE
[Hon. Joseph A. DiClerico, U.S. District Judge]

---

Before

Boudin, Chief Circuit Judge,
Lipez, Circuit Judge,
and Shadur,* Senior District Judge.

---

Bernard Grossberg, for appellants.
Thomas P. Colantuono, Assistant United States Attorney, with
whom Jean B. Weld, United States Attorney, was on brief, for the
United States.

---

March 15, 2007

---

*Of the Northern District of Illinois, sitting by designation.

**SHADUR, <u>Senior District Judge</u>.** This appeal stems from a civil forfeiture action brought by the United States on August 28, 2001 against eight parcels of real property, $12,187 in United States currency, six vehicles and five financial accounts. After Timothy Bishop ("Bishop") filed a timely Claim and Answer as to all in rem defendants listed in the initial Complaint, the district court stayed the action pending the outcome of Bishop's parallel criminal case. On July 24, 2003 Bishop was convicted of possession with intent to distribute marijuana in violation of 21 U.S.C. §841(a)(1), and on September 9 of that year the district court lifted the stay.

When the United States then moved for an interlocutory sale of the in rem defendants located in New Hampshire based on their deteriorating condition, the district court granted that motion. In an amended complaint the United States added an additional parcel of real estate plus an allegation that three of the previously named parcels were forfeitable under 21 U.S.C. §§881(a)(4) and (a)(6).[1]

On November 5, 2004 the United States filed its summary judgment motion, accompanied by an evidentiary record comprising 12 affidavits and numerous exhibits supporting its allegations that all of the in rem defendants were purchased with drug proceeds and

---

[1] Further citations to Title 21 provisions will take the form "Section --."

that four parcels had been used to facilitate drug trafficking. Bishop admitted in his Partial Objection to Motion for Summary Judgment ("Objection") that "he cannot mount a sufficient defense as to each asset to prove that it was acquired with untainted money." Bishop also asserted for the first time that the United States' summary judgment motion "must be denied because the Government's forfeiture complaint was filed outside the five year limitations period of 19 U.S.C. §1621."

On October 11, 2005 the district court ruled that Bishop had waived (more accurately, forfeited) any statute of limitations defense when he failed to raise that affirmative defense in a responsive pleading, though the court also held that the forfeiture proceeding was timely filed in any event. Because Bishop had also failed to dispute the merits of the forfeiture as to the assets at issue, the district court entered a Final Order of Forfeiture. Bishop takes this appeal from that order, also alleging in part that he was denied effective assistance of counsel and that the United States perpetrated a fraud on the court. Because none of Bishop's arguments possess any merit, we affirm the district court's decision.

## Background

Bishop's involvement in drug trafficking dates back to 1975, when he and a partner began to purchase approximately ten pounds of marijuana weekly for distribution. Bishop stored that

marijuana at the home he shared with his parents.  When he went to college in the late 1970s, Bishop began to purchase larger amounts of marijuana for sale to other street-level dealers.  From 1986 through 1988 several tenants who rented property owned by Bishop stored and sold marijuana from the property and paid rent to Bishop from drug proceeds.  During that time Bishop and a partner also purchased marijuana that they sold from another of Bishop's properties.  In the period from December 1999 to May 2001 Bishop purchased at least 260 pounds of marijuana from Roger Pageot at approximately $1300 per pound, then distributed the marijuana.

Beginning in 1983 Bishop's business was so robust that he was able to purchase numerous parcels of real property, each funded at least partially with proceeds from his drug sales.[2]  Financial records also indicated that Bishop eventually purchased a 1988 Porsche, a 1987 Honda motorcycle and a 2000 Audi A6 Quattro.  While the cost of those purchases aggregated more than $500,000, Bishop reported taxable income of only $200,000 during that same time period. Throughout the mid-1980's and early 1990s Bishop also deposited over $200,000 in various financial accounts.

Bishop's exploits began to attract law enforcement

---

[2] Bishop bought these parcels in Lowell, Mass., Windham, N.H. and Chelmsford, Mass. for the indicated prices: (1) in 1983, 9 to 11 Harrison Street, Lowell for $66,000; (2) in 1984, 6 Fox Street and 18 Bell Road, Windham for $85,000; (3) in 1988, 13 Harrison Street, Lowell for $65,000; (4) in 1989, 5 Fox Street, Windham for $79,000 in cash; (5) in 1990, 26 Glen Avenue, Chelmsford for $91,000; and (6) in 1998, 33 Lundberg Street, Lowell for $65,000.

attention. On November 2, 1996 police officers executed a search warrant at one of Bishop's properties after surveilling the premises. They seized an Ohaus electric gram scale, Ziploc bags, a box of marijuana, a triple beam scale and rolling paper.

Bishop ultimately became the subject of a Drug Enforcement Agency ("DEA") investigation in June 2001. Through a confidential informant ("CI") the DEA learned that the CI had been supplying Bishop with large quantities of marijuana since 1999. In addition the DEA learned that Bishop had been charged with possessing distribution amounts of marijuana in 1985 and 1996, as well as having been convicted twice in 1987 on charges of possessing a gun. Bishop contends that the DEA had knowledge of his drug trafficking history before 2001, arguing that Lowell police office Barry Goldner ("Goldner") must have submitted Bishop's 1996 arrest information to the DEA's federal database. But because Bishop submitted that contention without any evidentiary support despite his burden to produce rebuttal evidence, it cannot be credited at this stage of the proceedings.

It is undisputed that in the course of its investigation the DEA monitored and recorded meetings between Bishop and the CI. That investigation culminated in Bishop's arrest after the DEA videotaped Bishop buying four blocks of marijuana from the CI. On that same day investigators executed a search warrant at Bishop's address, where they recovered strong evidence of drug trafficking,

including drugs, drug ledgers and cash. Those drug ledgers were submitted to Special Agent Eugene Saupp ("Saupp"), a supervisory forensic examiner with the FBI, who concluded after investigation that the records seized at Bishop's house contained balances for 75 accounts related to his drug business between 1983 and 1987. According to Saupp, the records reflected a minimum total of $2,322,014 in drug sales during those years. Saupp also opined that some of the records related to sales in Bishop's more recent marijuana distribution business.

After his arrest Bishop pleaded guilty to possession with intent to distribute of approximately 50 pounds of marijuana in violation of Section 841(a)(1), receiving a 24 month prison sentence. Those events gave rise to the civil forfeiture proceedings that the district court later enforced on summary judgment and that Bishop now appeals.

## Standard of Review

We review summary judgment rulings de novo (Vives v. Fajardo, 472 F.3d 19, 21 (1st Cir. 2007)). We will not disturb a district court's summary judgment ruling so long as there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law (Fed. R. Civ. P. ("Rule") 56(c)). As Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc., 473 F.3d 11, 15 (1st Cir. 2007)(internal citations and quotation marks omitted) has explained, "[a]n issue is genuine if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it has the potential to affect the outcome of the suit." We have relatedly observed in Griggs-Ryan v. Smith, 904 F.3d 112, 115 (1st Cir. 1990) that "[a] genuine issue of material fact does not spring into being simply because a litigant claims that one exists." Griggs-Ryan, id. (internal citation omitted) further instructs that "[n]either wishful thinking...nor conclusory responses unsupported by evidence will serve to defeat a properly focused Rule 56 motion." Thus the nonmoving party must produce "hard evidence of a material factual dispute" (id.) to survive a summary judgment motion.

<u>Government's Burden of Proof</u>

Since the Civil Asset Forfeiture Reform Act of 2000 ("Act," amending 18 U.S.C. §§981-986[3]) the Government's burden to prove that certain property is subject to forfeiture was "increased...from mere probable cause (the old standard) to the preponderance of the evidence" (United States v. Lopez-Burgos, 435 F.3d 1, 2 (1st Cir. 2006)). Act §983(c)(1) states:

> [T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture.

Act §983(c)(3)(emphasis added) goes on to provide:

> [I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal

---

[3] Further citations to the Act will take the form "Act §--," omitting the prefatory "18 U.S.C."

-7-

> offense, the Government shall establish that there was a <u>substantial connection</u> between the property and the offense.

Bishop argues that the Government failed to satisfy its burden of proving that there was a sufficient nexus between the drug proceeds and Bishop's ownership of the property. We disagree.

At the outset we note that Bishop conceded that all in rem defendants were purchased, at least in part, with drug proceeds. Here is Bishop's concession, set out in his Objection:

> Therefore, for purposes of this proceeding only, Bishop will not contest the allegations that all 21 assets were purchased at least in sufficient part with drug-tainted money (or, in the case of liquid assets, include drug-tainted money) to make them subject to forfeiture.

That brings the in rem defendants within the ambit of Section 881(a)(7), which renders forfeitable:

> All real property, including any right, title and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment.

Bishop's concession removes any possibility of a genuine issue of material fact that could dispute the forfeitability of the properties. That being so, his objection to the district court's grant of summary judgment based on the Government's asserted lack of proof falls of its own weight. But even without Bishop's

concession, the United States provided ample additional evidence of a substantial connection between Bishop's drug trafficking and his properties.

For example, the Government demonstrated that five parcels of real property were forfeitable by virtue of their role in facilitating drug transactions. As to the 6 Fox Street property, the Government submitted evidence that the Windham, N.H. police officers discovered marijuana and drug paraphernalia there in early 1986, then found two plastic bags containing marijuana and a large scale when responding to a burglar alarm there a year later. Then in 2001 police seized from the location marijuana, drug paraphernalia and cash, as well as drug records reflecting 20 years of drug distribution.

Undisputed facts also confirm that the property where Bishop lived during his high school years, 9 to 11 Harrison Street in Lowell, was used for marijuana storage and distribution. In November 1996 officers seized items used to facilitate drug trafficking from that property, and again Bishop has admitted that he stored and distributed marijuana from that location.

As to the parcel next door, 13 Harrison Street, both Bishop's partner and his tenants distributed marijuana from that property. Evidence that a guitar case bearing 20 seven-pound bricks of marijuana was seized at that location offers ample proof that the connection between the property and drug trafficking was

indeed substantial.

Finally, the residence at 33 Lundberg Street in Lowell was also used for Bishop's drug activities. Bishop initially purchased that property using drug proceeds, then rented it to tenants who in turn bought marijuana from Bishop.

In sum, in light of the undisputed material facts that conclusively establish the requisite substantial connection between each of those properties and drug sales, the district court properly granted summary judgment forfeiting them to the United States. Bishop's challenge as to those parcels fails.

In addition to the real property, in rem defendants that were also subject to forfeiture include items covered by Section 881(a)(6):

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

On that score Bishop did not dispute that his legitimate income since the early 1980s never sufficed to support the purchase of the properties at issue. Moreover, a brief review of the evidence demonstrates that the Government's case did not at all rest on mere inferences from that fact.

For example, in August 2001 officers found in Bishop's

freezer $2,193 in United States currency that reeked of marijuana stored in the same freezer. In that same month Bishop transmitted a $10,000 down payment for 50 pounds of marijuana to a seller cooperating with the Government. Without question those funds met the requirements of Section 881(a)(6).

As for the remaining properties, the Government submitted evidence that Bishop's legitimate employment as a car salesperson could not support his lavish spending. For example, in 1996 and 1997 Bishop contributed $2,000 to an investment fund even though he reported no taxable income whatever. In 1998 he reported taxable income of $3,451, yet he opened a Charles Schwab money market account with two cashier's checks for $10,000 and $6,093.67. In 2000 Bishop also made a $15,000 cash down payment to purchase an Audi, and in 2001 he made a $5,600 cash payment toward the purchase of a Porsche. Bishop also maintained other cars and motorcycles by paying for repairs in cash.

In light of that congeries of facts, it was more than rational for the district court to determine that all of the properties were bought, at least in part, with proceeds from drug sales. Bishop conceded as much and, indeed, failed to offer any countervailing evidence. Under the circumstances the district court really had no choice but to grant summary judgment in the Government's favor.

Unable to contest forfeiture on the merits, Bishop falls

back on a request for a remand to enable him to present evidence that the DEA necessarily had knowledge of his illegal activities before 1996 and that he earned lawful income to support his lifestyle during the period in question. But Bishop's opportunity to proffer additional facts has come and gone, for he failed to produce any such facts when responding to the United States' summary judgment motion. With that not having been done at the district court level when it was appropriate to do so, Bishop cannot properly salvage the issue now (see such cases as States Resources Corp. v. Architectural Team, Inc., 433 F.3d 73, 85 (1st Cir. 2005)).

## Ineffective Assistance of Counsel

Bishop first advanced an asserted statute of limitations defense in his response to the Government's motion for summary judgment. There he contended that the Government had failed to file the action within the limits imposed by 19 U.S.C. §1621:

> No suit or action to recover any...forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered, or in the case of forfeiture, within 2 years after the time when the involvement of the property in the alleged defense was discovered, whichever was later....

That claim was rejected by the district court, which found that Bishop had forfeited that defense by failing to raise it in a responsive pleading. And even were that not the case, the district

court held that the proceeding was not time-barred in any event.

During this litigation Bishop changed legal representation time and again. Given his ever-shifting parade of lawyers, it is not entirely surprising that Bishop would argue that an asserted failure to receive effective assistance of counsel caused the statute of limitations defense to go unpleaded.

Bishop urges that he was first failed by original counsel Michael Natola ("Natola"), who was initially retained by Bishop's girlfriend. Despite not yet being named as counsel of record, Natola filed an answer on Bishop's behalf in November 2001--a pleading that did not raise a limitations-based affirmative defense. In October 2002 Bishop moved to have Natola withdraw and successfully asked leave for Philip DesFosses ("DesFosses") to represent him. Then in January 2004 DesFosses filed a motion to withdraw, although the docket sheet does not reflect whether that motion was granted. Shortly thereafter Bishop filed a pro se motion to set aside the forfeiture, which claimed that the Government had failed to provide notice and briefly mentioned a possible statute of limitations issue. That motion was denied.

When the United States thereafter filed its motion for summary judgment and accompanying brief, Bishop filed a motion requesting that counsel be appointed to represent him. Mary Notaris was initially appointed, but when she failed to respond to the district court's orders Michael Sheehan ("Sheehan") was

-13-

appointed to replace her. It was Sheehan who filed the Objection on behalf of Bishop and raised the statute of limitations defense, though he did not move to amend Bishop's pro se answer to include the statute of limitations defense even after the Government had highlighted that procedural defect in its reply.

When the district court then held that the statute of limitations defense had been forfeited because it was never pleaded in Bishop's answer, he included an ineffective assistance of counsel claim in the current appeal. But that claim is deficient in more than one respect.

First, the Sixth Amendment's guaranty of effective assistance of counsel in criminal proceedings (<u>see</u>, <u>e.g.</u>, <u>Evitts</u> v. <u>Lucey</u>, 469 U.S. 387, 395 (1985)) does not extend to civil proceedings. Like our sister circuits that have considered the issue, we have consistently rejected the availability of such a claim in civil forfeiture proceedings (<u>see</u>, <u>e.g.</u>, <u>United States v. One Lot of $25,721 in Currency</u>, 938 F.2d 1417, 1422 (1st Cir. 1991) and cases cited there).

Indeed, Bishop's attempted chief support for his ineffective assistance claim, <u>Glenn</u> v. <u>Aiken</u>, 569 N.E.2d 783, 787 (Mass. 1991), has taught that "[a] failure of a defendant's counsel in a civil case to plead an obviously winning affirmative defense would be a proper basis for a malpractice claim." If then Bishop had a valid limitations defense that was lost because of the

-14-

inadequacy of counsel, his remedy would have to be found in such a claim, not in the Constitution.

But no potentially viable claim of ineffective assistance exists in any event, for Bishop is wrong on the merits as well. Bishop contends that the United States' forfeiture action was based on his criminal activities from 1983 through 1987, which he urges would have barred the forfeiture action because it was brought in 2001, well beyond the statute's five-year limit. Bishop argues that information gathered and known in the 1980s by state and local police agencies should be imputed to federal investigators. But under 19 U.S.C. §1621 the statute of limitations is triggered only when the United States itself discovers that a particular asset is involved in an offense.

On that score Bishop did not produce even a shred of evidence supporting his claim that federal officers were aware of his criminal activity before 2001. While he contends that a local police officer submitted his 1996 drug arrest information to the DEA database, even if that were the case the Government's 2001 filing date would still fall within the statute of limitations.

On this issue as well, then, Bishop's fundamental failure to provide any proof beyond mere conclusory statements dooms his attack on the district court's grant of summary judgment. Hence the district court's conclusion that the forfeiture action was timely filed stands as well.

Bishop seeks to draw one final arrow from his quiver, asserting that the judgment against him below was obtained by "fraud on the court" in violation of Rule 60(b)(6), which permits relief from a final judgment for any reason "justifying relief from the operation of judgment."  In that respect <u>Simon</u> v. <u>Navon</u>, 116 F.3d 1, 5 (1st Cir. 1997) has explained that an "[a]ppellant faces formidable hurdles in pursuing a 60(b)(6) claim.  There must exist 'exceptional' circumstances that justify 'extraordinary' relief."  <u>Simon</u>, <u>id</u>. further describes the "extraordinary circumstances" exception to the normally limited scope of Rule 60(b)(6) as a "small escape hatch"--one that is unavailable to Bishop here.  To mix metaphors, Bishop simply cannot surmount the high bar that is set for relief under that provision.

According to Bishop, the Government's attorneys perpetrated a fraud on the court when they submitted affidavits from local New Hampshire law enforcement agents swearing that there was no contact between them and federal agents about Bishop's drug activities before 2001.  Bishop cites the absence of any mention in those affidavits of local officer Goldner's having purportedly submitted information about his 1996 arrest to the DEA national database pursuant to 28 C.F.R. ("Reg.") §0.101.[4]  Bishop attempts

---

[4]  Goldner authored the November 1996 search warrant reflecting that local police officials had information that Bishop stored marijuana at his home in New Hampshire and had an extensive history of selling large amounts of marijuana over a 15 year

to draw on two provisions within Reg. §0.101 to conclude that the Government had to have known what the local law enforcement officials knew back in 1996. Those provisions make the DEA responsible for "(a)...cooperation with State and local Governments in the enforcement of their drug abuse laws" and "(b) development and maintenance of a National Narcotics Intelligence system in cooperation with Federal, State and local officials...."

But Bishop relies solely on the regulatory language, without any corroborating evidence, to assert that information that local officers obtained in 1996 "would have necessarily been submitted to and recorded by the [DEA]." Simply because the Government never submitted any information about Bishop from the DEA's database, he attempts to draw "the inescapable inference of either willful blindness or deliberate concealment of such [DEA] records from the mid-1980's and 1996."

Even apart from the point made earlier that if Goldner <u>had</u> submitted information about Bishop to the DEA database in November 1996, the filing of the forfeiture action in August 2001 would still have been timely, Bishop's claim is also fatally flawed because he failed to present a Rule 60(b)(6) motion to the district court. In that regard such cases as <u>Roger Edwards, LLC</u> v. <u>Fiddes & Son Ltd.</u>, 427 F.3d 129, 132 (1st Cir. 2005) instruct that "Rule 60(b) permits a district court to reopen a final judgment for any

_____

period.

of six stated reasons," the sixth and last of which embraces what is called "fraud on the court." And "[n]ominally, the standard of review for decisions granting or denying Rule 60(b) motions is abuse of discretion."

Here there is no district court decision to review. Having failed to raise the issue before the district court, Bishop cannot now do so before us. As Toscano v. Chandris, S.A., 934 F.2d 383, 386-87 (1st Cir. 1991) has explained to the appellants there:

> [I]f Rule 60(b) was to be invoked while the case was on appeal, they should follow the procedure limned in Commonwealth of Puerto Rico v. SS Zoe Colocotroni, 601 F.2d 39, 42 (1st Cir. 1979)(if an appeal is pending, a Rule 60(b) motion should first be filed in the trial court, and the district judge, if inclined to allow it, may then request remand).

Just as was true of the appellants in Toscano, Bishop has come to a dead end for having failed to follow the proper procedure for bringing a Rule 60(b)(6) motion.

But there is still another--and dispositive--ground for holding Bishop's final arrow broken as well. Even if he could establish his now-unsupported allegations about the Government's actions, they would still not meet the standard that Roger Edwards, 427 F.3d at 133 has confirmed for parties wishing to overturn a judgment based on "fraud on the court":

> The cases have struggled, usually without great success, to provide a useful definition of "fraud on the court." One common version, drawn in part from language in Hazel-Atlas

-18-

> [Glass Co. v. Hartford-Empire Co., 322 U.S.
> 238 (1944)], refers to "an 'unconscionable
> scheme calculated to interfere with the
> judicial system's ability impartially to
> adjudicate a matter' involving an officer of
> the court."

Even such an offense as perjury may not suffice--instead the type
of conduct that would qualify as "fraud on the court" must be
something on the order of bribing a judge (see id.).

By contrast, Bishop's unsupported assertions in this
area, even if he could buttress them with some factual support (as
he has not), are--like the allegations in Roger Edwards, 427 F.3d
at 133--"at most the routine stuff of claims under Rule 60(b)(3)
and are weak examples even of that." Bishop never sought relief
under Rule 60(b)(3), and his fallback claim under Rule 60(b)(6) is
unavailing.

## Conclusion

Bishop has failed to meet his burden to defeat the United
States' motion for summary judgment. We therefore affirm the
district court's grant of summary judgment.

AFFIRMED.