# United States Court of Appeals
## For the First Circuit

No. 14-1175

UNITED STATES OF AMERICA,

Appellee,

v.

ASSORTED JEWELRY APPROXIMATELY VALUED OF $44,328.00,

Defendant In Rem,

ANGEL ABNER BETANCOURT-PÉREZ,

Claimant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille L. Vélez-Rivé, U.S. Magistrate Judge]

Before

Lynch, Selya, and Thompson,
Circuit Judges.

Joshua L. Gordon on brief for appellant.
Mainon A. Schwartz, Assistant United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Rosa Emilia Rodríguez-Vélez, United States Attorney, on brief for appellee.

August 10, 2016

**THOMPSON**, **Circuit Judge**. While executing a search warrant on Angel Abner Betancourt-Pérez's apartment, government agents found drugs in various quantities, a gun, and assorted jewelry valued at $44,328.00. This civil forfeiture action concerns the jewelry, which Betancourt-Pérez claims belonged to him lawfully and was unrelated to the illegal drug activities that are the subject of his criminal case. Unconvinced, the district court granted summary judgment to the government and ordered the jewelry forfeited. Betancourt-Pérez now appeals. For the reasons we explain, we vacate and remand for further proceedings.

### BACKGROUND

For over a year after the government filed a 70-defendant indictment for the activities of the drug trafficking organization "El Castillo," Betancourt-Pérez, a member of the conspiracy, remained a fugitive.

On the day of Betancourt-Pérez's eventual arrest, law enforcement surveilling his apartment on a tip observed him loading boxes (in which large quantities of marijuana were later found) into a vehicle in the parking lot. After arresting Betancourt-Pérez, government agents executed a search warrant in his apartment, where it appears Betancourt-Pérez lived solo. In Betancourt-Pérez's kitchen, they found cocaine and marijuana in various quantities ("behind the refrigerator kitchen cabinet," under the sink, in the oven, and in the kitchen closet), a pistol

(on top of the washer/dryer machine), and a collection of jewelry (also "hidden behind the kitchen cabinet on top of the refrigerator"). The jewelry, which is the topic of the present appeal, consisted of two men's watches, several men's chains and bracelets, a man's ring, several women's bracelets, and various other ornaments, together valued at approximately $44,328.

A second indictment was filed charging Betancourt-Pérez with drug and firearm counts related to his activities on the day of his arrest, and then a third charging him for his role in another unrelated conspiracy to source marijuana from Mexico, California, and Florida, and distribute it throughout Puerto Rico. Eventually, Betancourt-Pérez pled guilty to one count from each of the three criminal cases for conspiracy to possess with intent to distribute, as well as to one count of possession of a firearm in furtherance of a drug trafficking crime.[1]

On November 1, 2011, the government filed a verified complaint for forfeiture in rem against the seized jewelry, alleging that the jewelry was subject to civil forfeiture because it was linked to Betancourt-Pérez's illegal drug activity. Betancourt-Pérez intervened in the forfeiture action, averring that the jewelry was "not related in any way to illegal activity," and that "[a]ll of said property belong[ed] to Angel A.

---

[1] Betancourt-Pérez's appeal of his criminal sentence is the subject of a related opinion that we issue today separately.

Betancour[t]-Pérez."  During a brief discovery period, Betancourt-Pérez responded to the government's interrogatories by asserting again that all of the jewelry was "either bought by me with the fruits of my work, a gift, or my mother's belongings which I was storing for her."

The government subsequently moved for summary judgment, which the district court granted.[2]  Betancourt-Pérez timely appeals.

## DISCUSSION

We review a grant of summary judgment de novo.  Ortiz-Cameron v. Drug Enf't Admin., 139 F.3d 4, 5 (1st Cir. 1998). Summary judgment is appropriate where there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The forfeiture provision of the Controlled Substances Act provides that all money or "other things of value" that are furnished "in exchange for a controlled substance," and "all proceeds traceable" to such an exchange are subject to forfeiture. 21 U.S.C. § 881(a)(6).  Where the government's theory in a forfeiture action is, as it is here, "that the property . . . was involved in the commission of a criminal offense," the Civil Asset

---

[2] The government alternatively moved to dismiss Betancourt-Pérez's claim for lack of standing, which the district court denied.

Forfeiture Reform Act of 2000 ("CAFRA") puts the burden on the government to prove, by a preponderance of the evidence, that there is "a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). Although the government must show that "the property was connected with illegal drug transactions," it need not "link[] the property to a particular transaction." United States v. 1933 Commonwealth Ave., 913 F.2d 1, 3 (1st Cir. 1990).

The government argues that it has met its burden here based on the following facts: (1) the jewelry was found in Betancourt-Pérez's kitchen in close proximity to controlled substances, (2) Betancourt-Pérez pled guilty to various drug conspiracy counts in his related criminal case, and (3) Betancourt-Pérez's legitimate earnings were so meager that he could not have bought the jewelry with his legal income. The problem with the government's case is that only the first two of these facts are supported by the record, and without the third, the government falls short of clearing the preponderance-of-the-evidence hurdle.

First, a few words about the location of the jewelry and Betancourt-Pérez's guilty pleas. As the government has stated, the jewelry was found hidden in a refrigerator cabinet near a 1,056-gram brick of cocaine.[3] Additional drugs and a firearm were

---

[3] The Drug Enforcement Administration's investigation report stated that the jewelry was "behind the kitchen cabinet on top of the refrigerator," and that the brick of cocaine was found "behind the refrigerator kitchen cabinet." Thus, even if the report

also found hidden throughout the kitchen, all facts that support a possible connection between the jewelry and the illegal drug activity.  See United States v. $58,422.00 in U.S. Currency, 154 F. App'x 20, 22 (9th Cir. 2005) (noting that the fact that "both drugs and drug paraphernalia were found in close proximity to some of the [seized] assets" is persuasive evidence that the assets were acquired from drug trafficking); see also United States v. $149,442.43 in U.S. Currency, 965 F.2d 868, 877 (10th Cir. 1992) (coming to a similar conclusion).[4]

---

referred to two different refrigerator cabinets, it is clear that the jewelry and drugs were found in close proximity to each other.

[4] Betancourt-Pérez argues for the first time on appeal that we may not consider the fact that the jewelry was found in close proximity to the cocaine because, he claims, the government lacked sufficient probable cause for a warrant.  But Betancourt-Pérez gives this unpreserved argument short shrift, and so shall we.  To prevail on this argument, Betancourt-Pérez would first need to establish that the warrant was unlawful, which Betancourt-Pérez fails to do.  He perfunctorily claims: "Nothing in the record discloses any probable cause for the government to believe the boxes [that Betancourt-Pérez was loading in the van on the day of his arrest] contained contraband or anything suspicious that might create probable cause to search."  But he develops this argument no further (and has failed to include the search warrant itself in the record, we might add).  What's more, Betancourt-Pérez stipulated in his plea agreement to the contradictory fact that the search warrant had been issued not on the basis of agents observing him loading boxes into the van, but upon the discovery during a search incident to arrest that those boxes contained marijuana.  We thus cannot tell what Betancourt-Pérez's illegal search argument is, or whether it has any merit.  In short, Betancourt-Pérez did not properly preserve the argument below and we cannot make sense of it now -- both are grounds for us to consider the argument waived.  See Poloquin v. Garden Way, Inc., 989 F.2d 527, 531 (1st Cir. 1993); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Likewise, it is also true that Betancourt-Pérez pled guilty to participating in two large-scale drug conspiracies, as well as to conspiring to possess drugs with intent to distribute on the day of his arrest, and "[a] claimant's record of drug activity is a highly probative factor in the forfeiture calculus." United States v. $21,510.00 in U.S. Currency, 144 F. App'x 888, 889 (1st Cir. 2005) (quoting United States v. $67,220.00 in U.S. Currency, 957 F.2d 280, 286 (6th Cir. 1992)). But we think these two facts alone -- Betancourt-Pérez's admitted participation in drug conspiracies and the close proximity of the jewelry to the drugs -- do not establish by a preponderance of the evidence that the jewelry was purchased with proceeds from Betancourt-Pérez's illegal drug activity.

To put it another way, the undisputed facts give rise to two possible stories: either Betancourt-Pérez was a drug dealer who kept his valuables in his kitchen, and this included a collection of jewelry that he had amassed through legitimate means, potentially over the span of his life; or Betancourt-Pérez was a drug dealer who kept his valuables in his kitchen, and this included a collection of jewelry that he had purchased with drug money. Because the record does not compel a conclusion that the

second scenario is more likely than not, the government has failed to meet its summary judgment burden.[5]

We add that meeting the preponderance-of-the-evidence standard is not an exacting exercise, but it is also not a meaningless one. It is, moreover, an exercise that Congress, in passing CAFRA, deliberately chose to require of the government, heightening the standard of proof from the less-burdensome probable cause standard that formerly applied. 18 U.S.C. § 983(c)(1); see also United States v. Funds in the Amount of $3,670.00, 403 F.3d 448, 454 (7th Cir. 2005). Thus, it was the government's congressionally-imposed burden to put together a summary judgment record that would tip the scale toward connecting the jewelry to the drug activity, and it failed to do so here.

It bears mention that we would likely have been persuaded of a substantial link between the jewelry and drug activity if the record bore out the government's additional claim that Betancourt-Pérez lacked the means to purchase the jewelry with legal income because, aside from drug dealing, he had only limited, part-time work. In fact, in other civil forfeiture cases, a defendant's inability to purchase the seized property through legitimate means

---

[5] Indeed, the first scenario may be the more likely one. After all, far from a collection of costly investment pieces bought for purposes of laundering drug money, the jewelry appears to be a random assortment that includes several trinkets worth less than $100 and a "sweet fifteen" ring.

appears to be a core factor considered by the court in determining whether the property should be forfeited.  See United States v. 6 Fox St., 480 F.3d 38, 43-44 (1st Cir. 2007) (upholding forfeiture based, in part, on "evidence that [the claimant's] legitimate employment as a car salesperson," from which he earned only a few thousand dollars of taxable income, "could not support his lavish spending" on expensive vehicles and money market accounts); $58,422.00 in U.S. Currency, 154 F. App'x at 22 (upholding forfeiture on the basis of the property being found in "close proximity" to drugs and drug paraphernalia and the claimant's "lack of legitimate income sources").

Here, it appears that the government did have access to information regarding Betancourt-Pérez's employment and income: the government told the district court during a pretrial conference that Betancourt-Pérez earned only "a couple thousand dollars a year," and pretrial documents suggest that during discovery Betancourt-Pérez provided the government with letters from prior employers and his 2010 tax returns.  The record itself, however, contains none of this evidence.  Nor is there any evidence that the jewelry was part of a lifestyle so lavish that it, on its own, would strongly support the inference that it could not have been purchased through above-board means.

The government's brief, perhaps recognizing this omission, attempts belatedly to cure the defect by referring us to

- 9 -

the employment history section of the pre-sentence investigation ("PSI") report in Betancourt-Pérez's <u>criminal</u> case.  But the PSI report (which was prepared several months <u>after</u> the district court had ruled on the summary judgment motion) was never in the record in this civil case, and thus we may not consider it now.  Without it, the government has not done enough to establish a link between the jewelry and Betancourt-Pérez's drug activities by a preponderance of the evidence.[6]

The district court was thus incorrect to grant summary judgment for the government.  We vacate and remand for further proceedings in accordance with this decision.[7]

---

[6] We do not mean to suggest that proof of a defendant's legitimate income is required in every civil forfeiture case.  The government could have established a connection between the jewelry and drugs by means of other evidence, as well.  For example, in <u>United States</u> v. <u>$21,510.00 in U.S. Currency</u>, 144 F. App'x 888, 889 (1st Cir. 2005), we found the government's burden met where large amounts of cash were found hidden in the claimant's house, the claimant had pled guilty to conspiracy to distribute narcotics and admitted to discussing a drug deal with his co-conspirator less than four months before the seizure, <u>and</u> a canine search revealed traces of controlled substances on the cash itself.

[7] Although our decision followed the parties' lead in treating the jewelry as a collection and made no distinction among the different items, on remand, the parties will have an opportunity to make their respective cases as to each item.